UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ROLANDO MARTINEZ GARCIA,

      Petitioner,

v.                         Case No.  2:26-cv-10-JES-NPM

WARDEN, FLORIDA SIDE SOUTH
DETENTION FACILITY, et al.,

      Respondents.
_____/

## OPINION AND ORDER

Petitioner Rolando Martinez Garcia, an immigration detainee currently held at the Krome North detention facility in Miami, Florida, initiated this action by filing a pro se 28 U.S.C. § 2241 petition for writ of habeas corpus.  (Doc. 1).  Respondents filed a response and a supplemental response to the petition.  (Doc. 11; Doc. 17).  Upon review of the parties' filings, the Court finds that a reply is unnecessary, and the petition must be granted.

## I.   Background

Martinez Garcia, a citizen of Cuba, entered the United States as part of the Mariel boatlift in 1980.  (Doc. 1 at 2).  After serving sentences for convictions for lewd and lascivious assault of a child and trafficking in cocaine, Martinez Garcia was ordered removed from the United States on November 28, 2005.  (Doc. 11 at 2).  He was released under an order of supervision after Immigration and Customs Enforcement (ICE) determined that he did

not present a danger to the community, did not present a flight risk, and was not likely to be removed in the reasonably foreseeable future. (Doc. 1 at 2).

On November 6, 2025, Petitioner appeared for his regularly scheduled reporting in compliance with his order of supervision. (Doc. 1 at 2). He was taken into custody without explanation and remains detained by ICE. (Id.)

## II. Discussion

"Once a noncitizen's order of removal becomes administratively final, the Government 'shall' remove the person within 90 days." Singh v. U.S. Attorney Gen., 945 F.3d 1310, 1313 (11th Cir. 2019) (quoting 8 U.S.C. § 1231(a)(1)(A)). The government must detain the noncitizen during the 90-day removal period, which begins when the removal order becomes administratively final. Id. Detention may continue after the removal period, but not indefinitely.

Martinez Garcia argues that he is entitled to release under Zadvydas v. Davis, 533 U.S. 678 (2001), because his post-removal-order detention exceeds six months and there is no significant likelihood of removal in the reasonably foreseeable future. (Doc. 1 at 23–24). In Zadvydas, the Supreme Court held that "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." 533 U.S. at 700-01 (2001). If removal is not practically attainable,

2

detention no longer serves its statutory purpose of "assuring the alien's presence at the moment of removal." Id. at 699. The Court found it unlikely Congress "believed that all reasonably foreseeably removals could be accomplished in [90 days]." Id. at 701. So, "for the sake of uniform administration in the federal courts," it established a "presumptively reasonable period of detention" of six months—the 90-day removal period plus an additional 90 days. Id. Courts use a burden-shifting framework to judge the constitutionality of additional post-removal detention. If, after 180 days, the noncitizen provides "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the government must provide sufficient evidence to show otherwise. Id.[1]

Here, there is no dispute that Martinez Garcia has been in ICE custody for more than six months following his order of removal. On May 13, 2026, the Court directed Respondents to "explain how (and whether) Martinez Garcia's removal is likely in the reasonably foreseeable future." (Doc. 16 at 3). Respondents contend that Martinez Garcia is not entitled to release because

---

[1] The Supreme Court subsequently clarified that inadmissible aliens held in post-removal detention are also entitled to this type of individualized review after their detention exceeds six months. See Clark v. Martinez, 543 U.S. 371 (2005) (extending Zadvydas's holding to inadmissible aliens as a matter of statutory interpretation).

3

ICE attempted a third-country removal to Mexico on March 30, 2026, by driving Martinez Garcia to Hidalgo, Texas and giving him several verbal commands to exit the bus.  (Doc. 17 at 2; Doc. 17-2 at 2). When Martinez Garcia did not exit the bus, he was transferred back to Florida.  (Id.)  Thus, by failing to voluntarily depart, Respondents argue that Martinez Garcia has thwarted ICE's efforts at removal.

Section 1231(a)(1)(C) explicitly provides for extension of the removal period "if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C).  When addressing a Zadvydas claim, courts have applied § 1231(a)(1)(C) in different ways:

> Many courts conduct an analysis using the burden shifting framework from Zadvydas, considering an alien's failure to cooperate in determining whether the alien can show "good cause" to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Other courts contend that an alien's failure to cooperate precludes an analysis under Zadvydas altogether. Finally, some courts find an alien's failure to cooperate or filing of litigation equitably tolls, possibly indefinitely, the six-month removal period.  In fact, a couple of courts covered both bases finding obstruction tolled the removal period, and in the alternative, the alien did not meet the Zadvydas standard.

4

Glushchenko v. U.S. Dep't of Homeland Sec., 566 F. Supp. 3d 693, 705-06 (W.D. Tex. 2021) (footnotes omitted).  The Eleventh Circuit Court of Appeals has recognized that the six-month period may be tolled if the noncitizen "'acts to prevent [his] removal'" by filing litigation "challeng[ing] issues related to his removal order and his post-removal period detention."  Akinwale, 287 F.3d at 1052 n.4 (quoting 8 U.S.C. § 1231(a)(1)(C)).  More recently, the Eleventh Circuit noted that "if the removal period was extended by operation of § 1231(a)(1)(C), then ICE can continue to detain [the petitioner] because 'the keys to [the petitioner's] freedom [are] in his pocket and [he] could likely effectuate his removal by providing the information requested,' so he 'cannot convincingly argue that there is no significant likelihood of removal.'"  Singh, 945 F.3d at 1314 (quoting Pelich v. Immigr. & Naturalization Serv., 329 F.3d 1057, 1060 (9th Cir. 2003)).

Here, Respondents do not show that Martinez Garcia's actions implicated § 1231(a)(1)(C).  Respondents' position is based entirely on Deportation Officer Ricardo J. Herroro's vague assertion that "[o]n or about March 30, 2026, third country removal to Mexico was attempted at the Hidalgo, Texas Port of Entry.  During the third country removal the Petitioner refused to exit the bus after several verbal commands by Immigration Officials."  (Doc. 17-2 at 2).  Officer Herroro does not otherwise describe the events that occurred at the border.  It appears from the evidence

before the Court that ICE merely transported Martinez Garcia to the Mexican border and asked him to voluntarily depart. Respondents do not allege that Mexico actually agreed to accept Martinez Garcia or that ICE even had an approved plan for removal to Mexico that Martinez Garcia thwarted in some way. Further, assuming that Mexico was willing to accept Martinez Garcia, Officer Herroro does not explain why ICE could not or did not thereafter seek travel documents for him or otherwise plan for his removal to Mexico in a different way, such as a charter flight. Without more, the Court cannot find that Martinez Garcia's actions in Texas as described in Officer Herrero's Declaration prevented his removal and reset Zadvydas' 180-day clock.

Respondents present no evidence showing any significant steps taken to remove Martinez Garcia to Cuba or another country, despite having more than six months to do so. Instead, their only effort at removal—made four months after Martinez Garcia's current immigration detention—was a trip to the United States-Mexico border in an apparent attempt to coerce him into "voluntarily" departing to a country of which he is not a citizen. But detaining a 70-year-old noncitizen and using the specter of continued detention to compel him to "voluntarily" depart by walking across the international border does not constitute removal; rather, it is precisely the type of indefinite detention that Zadvydas sought to prevent. Respondents provide no evidence suggesting that ICE

actually communicated with Mexico (or any other country) specifically regarding Martinez Garcia. Nor has Respondent demonstrated that necessary travel documents have been sought—let alone obtained—for any country.

In short, Respondents have had more than twenty years—and more than six months since his last redetention—to remove Martinez Garcia and have still been unable to articulate a specific plan for his removal to Cuba, Mexico, or any other country. The Court's confidence in Petitioner's foreseeable removal is further undermined by the fact that other district courts recognize that Mexico's acceptance of a Cuban national may be contingent upon the noncitizen's agreement to go there. See Sanchez v. Bondi, et al., No. C25-2573-KKE, 2026 WL 160882, at 3-4 (W.D. Wash. Jan. 21, 2026) (noting that Mexico's conditional acceptance casted doubt on Respondents' ability to remove the petitioner); Arenado-Borges v. Bondi, No. 2:25-cv-2193-JNW, 2020WL 3687518, at *4 (W.D. Wash. Dec. 19, 2025) ("[T]he record suggest Mexico's acceptance may be contingent on the noncitizen's consent"). And while there may be some possibility that Mexico will eventually accept Martinez Garcia, "that is not same as a significant likelihood that [he] will be accepted in the *reasonably foreseeable future*." Arenado-Borges, 2025 WL 3687518, at *4 (emphasis added, quotations omitted).

7

Based on the evidence, or lack thereof, the Court finds that Respondents have failed to show a significant likelihood that Martinez Garcia will be removed in the reasonably foreseeable future. Therefore, he is entitled to release from detention under Zadvydas, but he remains subject to the terms of an order of supervision. If Martinez Garcia fails to comply with the conditions of release, he may be subject to criminal penalties—including further detention. See 8 U.S.C. § 1253(b); Zadvydas, 533 U.S. at 695("[W]e nowhere deny the right of Congress ... to subject [aliens] to supervision with conditions when released from detention, or to incarcerate them where appropriate for violations of those conditions").

If removal becomes likely in the reasonably foreseeable future, ICE can re-detain Martinez Garcia to "assur[e] [his] presence at the moment of removal." Zadvydas, 533 U.S. at 680.

### III. Conclusion

Accordingly, it is **ORDERED**:

1. Rolando Martinez Garcia's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED** to the extent set forth in this Order.

2. Respondents shall release Martinez Garcia within 24 hours of this Order, and they shall facilitate his transportation from the detention facility by allowing him telephone access to notify counsel and his family of when and where he can be collected.

8

3.    The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on May 22, 2026.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE